# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **CRIMINAL ACTION NO.** |
| **v.** | ) | **1:14-CR-103-WBH-AJB** |
| | ) | |
| **JAMES COHENS,** | ) | |
| *f/k/a Calvin Johnson,* | ) | |
| | ) | |
| **Defendant.** | ) | |

## UNITED STATES MAGISTRATE JUDGE'S
## <u>FINAL REPORT AND RECOMMENDATION</u>

Defendant James Cohens moves to suppress statements he made to federal law

enforcement agents at the Federal Correctional Institution (Low) at Coleman, Florida

(hereinafter "the FCI") on October 15, 2009. [Docs. 18, 26]. He also moves to dismiss

Count Two of the superseding indictment. [Doc. 19]. The Court held an evidentiary

hearing on the motions to suppress, [Doc. 31 (hereinafter "T__")], after which the

parties filed briefs. [Doc. 34 (Cohens), 35 (government)].[1] For the following reasons,

the undersigned **RECOMMENDS** that the motions be **DENIED**.

---

[1]      Cohens did not file a reply.  (*See* Dkt.).

## I.  Introduction

Cohens is named in a superseding indictment with obstruction of the Internal Revenue Service ("IRS") (Count One), failure to file an individual tax return (Count Two), and false statements in a passport application (Count Three).  [Doc. 12]. In his initial and supplemental motions to suppress statements, Cohens alleged that his statements to the agents at the FCI should be suppressed because they were not preceded by warnings under *Miranda v. Arizona*, 384 U.S. 436, 478 (1966), and even if the interviewing agents satisfied *Miranda*, he was entitled to a hearing on the voluntariness of those statements pursuant to *Jackson v. Denno*, 378 U.S. 368, 376-77 (1964).  [Doc. 18 at 4; Doc. 26, *passim*].

In his motion to dismiss, he alleges that Count Two should be dismissed on statute of limitations grounds.  [Doc. 19].  At the pretrial conference, Cohens was given additional time to perfect the dismissal motion, [Doc. 21].  However, no perfected motion was filed.  [*See* Dkt.].

## II.  Motion to Suppress Statements

### A.  Facts

The relevant facts for resolution of the motions to suppress are as follows.  Prior to September 2009, Monique Fields, an IRS criminal investigation special agent

2

("CI SA"), was investigating Cohens, known to her as Calvin Johnson,[2] for impeding and obstructing the due administration of the tax laws (26 U.S.C. § 7212(a), filing false claims with the government (18 U.S.C. § 287), and tax evasion (26 U.S.C. § 7201). T4-5, 15.  In connection with that investigation, she prepared a summons directing him to produce business records to the IRS, and ultimately was able to serve the summons upon Cohens's wife. T5-6.  Thereafter, in September 2009, she received a telephone call from Cohens, who acknowledged that his wife told him that she received a summons on his behalf for business records but, because he was incarcerated at the FCI, he needed extra time to comply with the summons. T6.[3]  Fields agreed to give him extra time.  T6.  Thereafter, Fields made arrangements with the FCI assistant warden to conduct a law enforcement interview of Cohens at the FCI.  T6-7, 17.

On October 15, 2009, Fields and another IRS CI SA, Keisha Lyle, went to the FCI to interview Cohens, who was serving a sentence for passport fraud unrelated to the IRS criminal investigation.  T7, 11 17.  She had not given Cohens prior notice of

_____

[2]    Although he was referred to as Calvin Johnson in the evidentiary hearing, in this R&R, the Court will refer to him in the name under which he was indicted, James Cohens.

[3]    The summons served on Cohens's spouse was issued administratively. T26.

3

coming to interview him.  T15.  The agents were dressed in business suits and were not carrying firearms.  T7.  They were advised by the FCI that they had only thirty minutes to conduct the interview.  T8.  The agents were escorted through locked doors to get to the interview room.  T18.  The interview took place in a small room with a table and three or four chairs, T8, and appeared to be a room used for attorney consultation purposes.   T16.   The room was next to an area designated as "Receiving and Discharge," where the agents saw between ten and twenty other inmates, but none of the inmates was in the vicinity of the interview room when Cohens was questioned by the agents.  T18, 22.  Two of the walls of the interview room were constructed of drywall on the bottom and glass on the top, and although the room had no windows, people were visible when walking past the room.  T8, 21, 31.  Cohens, escorted by a prison staff member, entered the room a few minutes after the agents had entered the room.  Fields and Lyle sat next to one another and Cohens sat on the opposite side of the table from them.  T8, 18.  He was wearing prison attire.  T29.  Fields did not recall if he was restrained with handcuffs.  T18-19, 30.  The prison staff member left.  T22. The door to the room was closed.  T20.

The agents identified themselves and displayed their credentials to Cohens. T9, 28.  Fields notified Cohens that they were conducting a tax investigation that could

result in criminal charges.  T9, 25, 28.  She read him *Miranda* rights from a preprinted

card, which provided as follows:

> Before we ask you any questions, it is my duty to advise you of your rights.
>
> - You have the right to remain silent.
> - Anything you say can be used against you in court, or other proceedings.
> - You have the right to consult an attorney before making any statement or answering any question, and you may have an attorney present with you during questioning.
> - You may have an attorney appointed by the U.S. Magistrate or the court to represent you if you cannot afford or otherwise obtain one.
> - If you decide to answer questions now with or without a lawyer, you still have [the] right to stop the questioning at any time, or to stop the questioning for the purpose of consulting a lawyer. HOWEVER. . .
> - You may waive the right to advice of counsel and your right to remain silent, and you may answer questions or make a statement without consulting a lawyer if you so desire.

Gov't Ex. 1; T9-10, 24, 25.  The agents did not have, nor did they present, a written

*Miranda* waiver form.  T24.  Cohens was asked and stated that he understood his rights

and was willing to talk.  T10, 29.

The agents did not threaten Cohens or make him any promises.  T10, 11, 12.

Cohens did not invoke his right to an attorney or any other rights.  T11, 29.  Fields

described the tone of the interview as an "amicable, professional interview setting," and

5

testified that the agents did not raise their voices or use an angry tone.  T11, 12. Neither agent used any physical force upon Cohens.  T11-12.  At no time during the encounter was Cohens touched by the agents.  T31.

Cohens described his health as good, and he appeared healthy and not under the influence of medications.  T12-13.  He did not mention that he was an insulin-dependent diabetic or on blood pressure medication.  T23.[4] He appeared to understand the questions posed to him, and he declined to answer some of the agents's questions, and when that happened, the agents moved to questions on a different subject.  T13-14. One of the areas about which Cohens was questioned was the formation of a trust.  T26. Fields also presented various documents to Cohens, which he reviewed.  T31.  Cohens told the agents he was going to be released from custody on December 10, 2009, but he expected to go to a halfway house around October 27, 2009.  T27-28.  Before Fields scheduled the visit to the FCI, she was aware that Cohens was going to be released from custody in October.  T15; *see* Doc. 18-1 at 1.

_____

[4]      Fields testified at the 2014 hearing that Cohens appeared fifty pounds lighter than when she interviewed him in 2009.  T24.

Fields and Lyle started speaking to Cohens at 2:45 pm and the session lasted thirty minutes exactly.  T10, 14, 22.  At the end of thirty minutes, a Bureau of Prisons employee escorted Cohens out of the interview room.  T14, 28.

### B. Contentions of the Parties

Cohens contends that he was in custody for *Miranda* purposes.  [Doc. 34 at 8]. He concedes that he was advised of his *Miranda* rights but contends that the evidence did not demonstrate that he understood them or voluntarily agreed to waive them.  [*Id.* at 9].  His main contention on this point is that Fields's testimony about how Cohens expressed his willingness to talk to the agents is not known because she merely stated, in response to the question, "Did Mr. [Cohens] indicate to you that he was willing to talk with you?" that "Yes, he did."  [*Id.* at 10].   While acknowledging that a written waiver is not necessary, Cohens argues that its absence is a factor for the court to consider.  [*Id.* at 11].

Cohens also argues that even if he was properly *Mirandized* and his waiver was valid, the government did not establish that his statements were voluntarily made in accordance with *Jackson v. Denno*, *supra*, and 18 U.S.C. § 3501.  [Doc. 34 at 14].  He argues that the agents manipulated the situation in that they deliberately went to see

AO 72A
(Rev.8/8
2)

him while he was still in custody even though they knew that he was going to be released soon, contending that "this was done precisely because of the advantages to law enforcement of the more coercive atmosphere of a person who is in custody." [*Id.*]. He also contends that the circumstances of the interrogation added to this coercion in that he was given no option other than to proceed to the interrogation room "where he was left with no option to terminate the interview." [*Id.*].

In response, the government argues that Cohens was not in custody for purposes of *Miranda* but in any event the issue is irrelevant because he in fact was given *Miranda* warnings. [Doc. 35 at 5]. In addition, it contends that he voluntarily waived his *Miranda* rights. It argues that there was no evidence of intimidation, deception, or coercion since, *inter alia*, the session was described as amicable, professional and conversational; he was advised that the agents were conducting a criminal tax investigation; and the agents did not press him on the questions he chose not to answer. [*Id.* at 6-7]. The government further contends that Cohens understood his rights and agreed to answer questions. [*Id.* at 6-8]. It argues that Fields's testimony that she advised Cohens of his rights and that he agreed to waive them, where her credibility was not challenged, is sufficient to demonstrate that Cohens voluntarily waived his rights. [*Id.* at 8 (citing *United States v. Toyer*, 274 Fed. Appx. 844, 846

8

(11th Cir. Apr. 23, 2008) (affirming district court finding that a defendant implicitly waived his *Miranda* rights by giving statements to police after being advised of his rights based upon the credible testimony of the agent who advised him of those rights)]. The government also contends that case law teaches that the failure to have a written waiver of rights is not an invocation of one's *Miranda* rights. [*Id.* (citations omitted)]. It also notes that the fact that Cohens elected not to answer certain questions demonstrates that he understood his rights and agreed to waive them. [*Id.*].

The government also submits that Cohens's statements were voluntary for many of the same reasons demonstrating that his *Miranda* waiver was voluntary, in that the agents explained why they were there to question him; he was advised of his rights, including the right not to answer any questions; and the setting was amicable and professional, without any physical force being applied. [*Id.* at 9]. It also notes in response to Cohens's argument that there was no evidence as to his options if he wanted to terminate the interview, that there is no evidence that Cohens sought to terminate the interview. [*Id.* at 9-10]. Instead, it argues, the record shows that no promises or threats were made to him, there was no evidence of coercion, he appeared in good health, he answered some questions and did not answer others, and the interview lasted only thirty minutes. [*Id.*].

9

### C. Discussion

In *Miranda*, 384 U.S. at 444, the Supreme Court held that the government "may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."  Under *Miranda*, an uncounseled statement made by a defendant during custodial interrogation should be suppressed from use by the government in its case-in-chief unless the prosecution proves that the suspect voluntarily waived his or her right to counsel and privilege against self-incrimination.  *Id.*

Law enforcement officials are required to adhere to *Miranda*'s requirements only when engaged in a "custodial interrogation."  *Oregon v. Mathiason*, 429 U.S. 492, 494 (1977).  " '[C]ustody' is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion."  *Howes*, 132 S. Ct. at 1189.  The *Howes* Court held that there is no *per se* requirement that a defendant who is in prison and is interviewed on unrelated crimes be advised of his *Miranda* rights.  *Id.* at 1187. Rather, whether an interview in prison is custodial depends on a variety of factors, including "duration [of the questioning], statements made during the interview, the

10

presence of physical restraints during questioning, and the release of the interviewee at the end of the questioning." *Id.* at 1189 (internal citations omitted).

In the present case, the Court need not decide whether Cohens was in custody for purposes of *Miranda* and *Howes*, because it is undisputed that Fields properly advised Cohens of his *Miranda* rights.[5]   The only questions are whether he voluntarily

---

[5]     In the event the District Court disagrees with that conclusion, the undersigned alternatively recommends a finding that Cohens was not in custody for purposes of *Miranda* and therefore concludes the agents were not required to advise him of his *Miranda* rights.  The defendant bears the burden of establishing that he was in custody for purposes of *Miranda*.  *United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir. 1978) (holding that "if a defendant shows that a confession was obtained while he was under custodial interrogation, the government then has the burden of proving that the defendant voluntarily waived his privilege against self-incrimination."); *see also United States v. Charles*, 738 F.2d 686, 692 (5th Cir. 1984), *overruled on other grounds, United States v. Bengivenga*, 845 F.2d 593 (5th Cir. 1988) (same).   The Eleventh Circuit has  described the test for determining custody for *Miranda* purposes as follows:

> A defendant is in custody for the purposes of *Miranda* when there has been a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.  Whether [a defendant] was in custody prior to his formal arrest depends on whether under the totality of the circumstances, a reasonable man in his position would feel a restraint on his freedom of movement to such extent that he would not feel free to leave.  The test is objective: the actual, subjective beliefs of the defendant and the interviewing officer on whether the defendant was free to leave are irrelevant.  Under the objective standard, the reasonable person from whose perspective 'custody' is defined is a reasonable innocent person.

*United States v. Barry*, 479 Fed. Appx. 297, 299 (11th Cir. July 9, 2012) (quoting

11

_____

*United States v. Brown*, 441 F.3d 1330, 1347 (11th Cir. 2006) (quotations, citations, alteration, and emphasis omitted).  The circuit court also instructs district courts to also consider " 'whether the officers brandished weapons, touched the suspect, or used language or a tone that indicated that compliance with the officers could be compelled.' " *Id.* (quoting *United States v. Street*, 472 F.3d 1298, 1309 (11th Cir. 2006) (quotation omitted)).  Recently, however, the Supreme Court has explained that the "free-to-leave" test is not to be literally applied:

> Determining whether an individual's freedom of movement was curtailed, however, is simply the first step in the analysis, not the last.  Not all restraints on freedom of movement amount to custody for purposes of *Miranda*.  We have "decline[d] to accord talismanic power" to the freedom-of-movement inquiry, *Berkemer* [*v. McCarty*, 468 U.S. 420,] 437 [(1984)], and have instead asked the additional question whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*.  "Our cases make clear . . . that the freedom-of-movement test identifies only a necessary and not a sufficient condition for *Miranda* custody." [*Maryland v.*] *Shatzer*, [559 U.S. 98, 112 (2012)].

*Howes*, 132 S. Ct. at 1189-90; *see also United States v. Luna-Encinas*, 603 F.3d 876, 881 (11th Cir. 2010) (explaining that "although a reasonable person in the defendant's position may feel constrained not to leave the scene of a police encounter at a particular moment—and thus may be deemed to have been 'seized' by law enforcement—he will not necessarily be considered in 'custody' for Fifth Amendment purposes. . . .  Rather, 'a free-to-leave inquiry reveals only whether the person questioned was seized.' . . .  While 'seizure is a necessary prerequisite to *Miranda*, . . . a court must [also] ask whether . . . a reasonable person would have understood his freedom of action to have been curtailed to a degree associated with formal arrest.' ") (citations omitted).

Here, Cohens has not established that he was in custody for *Miranda* purposes.  The interview was short, lasting only thirty minutes.  There is no evidence that he was restrained, which in any event would be inconsistent with the low security FCI in which

waived his rights and whether the ensuing statements were voluntary.

A "defendant may waive effectuation of [*Miranda*] rights, provided the waiver is made voluntarily, knowingly and intelligently." *Miranda*, 384 U.S. at 444. The government must prove waiver by a preponderance of the evidence. *United States v. Glover*, 431 F.3d 744, 748 (11th Cir. 2005). To meet its burden, the government may not rely on "presumptions or inferences that when police officers read to an accused from a card they are reading *Miranda* warnings or that what is read, without revelation of its contents, meets constitutional standards." *Moll v. United States*, 413 F.2d 1233, 1238 (5th Cir. 1969).

Voluntariness is a two-part inquiry:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if

---

Cohens was incarcerated. No firearms were brandished, much less present. The interview was amicable and conversational, the agents did not use a tone indicating that they could compel his compliance, nor did they search him or otherwise touch him. Cohens refused to answer some questions posed to him, and the agents did not press him to answer those questions. At the conclusion of the questioning, Cohens left the room as he came–escorted by an FCI guard. Under these facts, a reasonable person would not have understood his freedom of action to have been curtailed to a degree associated with a formal arrest, since the entire episode lacked the level of restraint and coercion by the questioning agents associated with a "station house" custodial setting.

13

> the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986); *United States v. Ransfer*, 749 F.3d 914, 935 (11th Cir. 2014); *see also United States v. Bowleg*, 567 Fed. Appx. 784, 793 (11th Cir. May 28, 2014) (citing *United States v. Barbour*, 70 F.3d 580, 585 (11th Cir. 1995)).

Here, Cohens's waiver of his *Miranda* rights was voluntary. First, there was no intimidation, coercion, or deception by the agents. Cohens was read the *Miranda* rights form. He was presented the form in a room furnished with a table and chairs; the surroundings, while not spacious or luxurious, were not uncomfortable. Although his encounter with Fields and Lyle was at the FCI and the door was closed, the room's occupants could see out into other areas of the FCI when inside the room because the top half of two of the walls was glass. Although no inmates were close by, the room was either adjacent to or very close by Receiving and Discharge, where a number of other inmates were present. Therefore, Cohens was not isolated or intimidated by the surroundings. The agents used a conversational tone to speak to Cohens and were unarmed and dressed in business attire. Cohens was not physically touched by the agents. Although Fields could not remember if Cohens was physically restrained such

14

as by handcuffs, that would be unusual in a low security facility such as the FCI where Cohens was housed.  The prison guard who had escorted Cohens to the room had left.  Thus, there was no intimidation or coercion.  The *Miranda* warnings read to Cohens were an accurate description of those rights and there is no evidence that the agents deceived Cohens about his rights or contradicted them in their statements to him.

Second, the waiver was intelligently and knowingly made.  As noted, the *Miranda* rights conveyed to Cohens were accurate, in that he was told that he could remain silent and what he stated could be used against him in court; he was entitled to a lawyer, and one would be appointed to represent him if he could not afford one, before any questioning and the lawyer could be present during the questioning; and he could stop answering questions at any time.  Cohens was college educated.  [Doc. 18-1 at 2].  Most significantly, the record shows that Cohens understood his rights because he did not answer certain questions and was not pressed on these topics by the agents.

The Court rejects Cohens' specific arguments that the government did not show a valid waiver under *Miranda*.  His first argument is that Fields's answer to the question about whether Cohens waived his rights and agreed to answer questions, with "Yes, he did," T10, is without merit because (1) there was no contrary evidence and (2) it is

15

supported by Field's later testimony that Cohens was willing to answer her questions. T29. His second argument, that Cohens did not waive his rights in writing, also is rejected because a written waiver is not a prerequisite to finding a valid voluntary waiver. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979) (holding that written *Miranda* waiver "is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver"); *United States v. Bernal-Benitez*, 594 F.3d 1303, 1319 (11th 2010) (holding that "failing to obtain a signed *Miranda* waiver alone is not proof that the defendant did not freely and intelligently waive his rights. Rather, the *Miranda* waiver form is but one of the pieces of evidence the court considers in determining whether the Government has proved by a preponderance of the evidence that the defendant voluntarily waived his rights."); *United States v. Beckles*, 565 F.3d 832, 840 (11th Cir. 2009) (quoting *Butler*, *id.*); *United States v. McDaniel*, 463 F.2d 129, 135 (5th Cir. 1972) (admitting confession despite refusal to sign waiver because "a detainee may make statements that are quite voluntary without signing a written waiver").

Accordingly, the Court concludes that Cohens voluntarily, intelligently and knowingly waived his *Miranda* rights.

16

As for the voluntariness of his statements, the Eleventh Circuit has directed courts to "consider the totality of the circumstances, including the details of the interrogation and the defendant's characteristics, when deciding whether a confession was voluntary." *Bernal-Benitez*, 594 F.3d at 1319. Factors considered include the defendant's lack of education or low intelligence, failure to appraise the defendant of his rights, the length of detention, "the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep." *Waldrop v. Jones*, 77 F.3d 1308, 1316 (11th Cir. 1996) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)); *see also United States v. Thompson*, 422 F.3d 1285, 1295-96 (11th Cir. 2005) ("Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession." (quotation marks omitted)).

Applying these factors to the facts of this case result in a conclusion that Cohens' statements were voluntary. As noted, Cohens was educated. He was advised of his rights, and he exercised them during the questioning by refusing to answer some questions, and then he was not pressed by the agents to answer those questions. The questioning was relatively short– just thirty minutes. While Cohens argues that there

17

is no evidence that he knew he was going to be questioned for just thirty minutes, there is no evidence that the agents told him that he would be subjected to a long questioning session. It is just as likely that Cohens knew the questioning would not be lengthy due to an afternoon inmate count. Finally, Cohens was not physically touched by the agents, threatened, or made any promises in order to get him to answer questions.

For all of the above and foregoing reasons, the undersigned **RECOMMENDS** that Cohens's motion to suppress statements, [Docs. 18, 26], be **DENIED**.

### III.  *Motion to Dismiss*

In this motion, Cohens argues that Count Two of the superseding indictment should be dismissed because it was filed outside the statute of limitations. [Doc. 19 at 1-2]. Although Cohens was directed at the pretrial conference to supplement or perfect his motion, he did not. Regardless, the Court will address his arguments.

In Count Two, Cohens is charged with willfully failing to make an individual tax return for the tax year 2007 on or before April 15, 2008, in violation of 26 U.S.C. § 7203. [Doc. 12 at 3]. The initial indictment in this case was filed on

18

March 25, 2014, [Doc. 1], which was almost six years after the statute of limitations began to run.

The limitations period for a § 7303 charge is usually three years, 26 U.S.C. § 6531, subject to certain exceptions.  One of those exceptions is set forth in § 6531(4), making the operative statute of limitations six years for willfully failing to make a return.  Since the indictment charges that Cohens willfully failed to make his 2007 return by the date it was due, the indictment was returned within the applicable six-year limitations period.

Although Cohens recognize that under certain circumstances the government may properly rely upon the extended limitations period, he argues that the government should be compelled to justify its reliance on the broadened limitations period in this case.  However, pretrial, the government is not required to demonstrate its justification for the charge.  The "sufficiency of a criminal indictment is determined from its face." *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006).  Moreover, a district court may not dismiss an indictment prior to trial on grounds of insufficiency of evidence.  Neither this judge nor the District Judge is authorized to do that.  *Id.* (A "court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial.") (quoting *United States v. Torkington*, 812 F.2d 1347, 1354

19

(11th Cir. 1987)).  The proper avenue to challenge the sufficiency of the government's evidence is by way of a motion for judgment of acquittal after the close of the government's case, and not by a pretrial motion to dismiss.  *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004).

Since the count at issue charges that Cohens willfully failed to make a return, the count properly charges an offense within the statute of limitations and is not subject to dismissal as a matter of law prior to trial.

Accordingly, the undersigned **RECOMMENDS** that Cohens's motion to dismiss, [Doc. 19], be **DENIED**.

### IV. Conclusion

For all of the above and foregoing reasons, the undersigned **RECOMMENDS** that Cohens's motion to suppress statements, [Docs. 18, 26], and his motion to dismiss Count Two of the superseding indictment, [Doc. 19], be **DENIED**.

The Court has now recommended a ruling on all matters referred, and has not been advised of any further impediments to the scheduling of a trial.  Therefore, this matter is **CERTIFIED READY FOR TRIAL**.

20

**IT IS SO RECOMMENDED AND CERTIFIED**, this the 25th day of February, 2015.

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

21